UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VINCENT CLINE,                            )<br>                                                      )<br>     Plaintiff,                                   )<br>                                                      )      CIVIL ACTION FILE<br>v.                                                  )      NO._____<br>                                                      )<br>DAL GLOBAL SERVICES, LLC     )      **JURY TRIAL DEMANDED**<br>and DELTA AIRLINES INC.           )<br>     Defendants.                              )    | |

## COMPLAINT

Plaintiff Vincent Cline ("Plaintiff" or "Mr. Cline") submits the following Complaint against Defendant DAL Global Services, LLC ("DGS") and Delta Airlines Inc. ("Delta" or collectively "Defendant Co-Employers" or "Defendant Employers").

## INTRODUCTION

Plaintiff is African American. He began working for Co-Employers in January 2017 as an aviation maintenance tech. Specifically, DGS placed Plaintiff with Delta. In approximately February 2018, a white male Delta co-worker hung a noose at the workplace. Plaintiff and an African American co-worker made a complaint of race discrimination. Plaintiff supported his African American coworkers' compliant, and the white co-worker was fired. However, despite terminating the white co-worker Plaintiff began to feel ostracized at work. For

example, his co-workers would not speak to him, and they gave him dirty looks etc. The retaliation was very stressful for the Plaintiff and it contributed to him having a heart attack on or around June of 2018. Plaintiff contacted his Co-Employers and he was granted FMLA leave, but when he was ready to return from leave he was not allowed to return despite the fact that Delta had need for him. Instead, Plaintiff was replaced. Plaintiff was replaced and not allowed to return to his position to interfere and/or retaliate against him for his use of FMLA leave, to punish him because of his race and to retaliate against him for his support of a complaint of race discrimination, and lastly because of his need for a disability accommodation. Plaintiff to this day is listed as an employee with Co-Employers, but he has never been placed back on the schedule despite his repeated request to be reinstated.

## **JURISDICTION AND VENUE**

1. Mr. Cline's claims present multiple federal questions over which this Court has jurisdiction under 28 U.S.C. §§ 1331 *et seq.* and this Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

2. This Court is an appropriate venue for all of Mr. Cline's claims under 28 U.S.C. § 1391(b) and (c) because all of the parties reside within the Northern District of Georgia, and the substantial majority of events giving rise to Mr. Cline's claims occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

3. On January 17, 2019, Mr. Cline timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against DGS. Attached hereto and incorporated herein as **Exhibit A**.

4. As Delta and DGS are joint employers Delta was also aware of Plaintiff's EEOC charge when it was filed.

5. On October 26, 2020, the EEOC issued Mr. Cline his notice of right to sue. Attached hereto and incorporated herein is **Exhibit B**.

6. Plaintiff has exhausted her administrative remedies prerequisite to the filing this suit pursuant to the ADA.

7. Suit has been filed within 90 days of Plaintiff's receipt of his notice of right to sue.

## PARTIES

8. Defendant Employers are both for-profit corporations organized under the laws of the state of Georgia and registered to conduct business in the state of Georgia.

9. This Court has personal jurisdiction over each Defendant.

10. Joint Employers may be served through their same registered agent:

CORPORATION SERVICE COMPANY
40 TECHNOLOGY PARKWAY SOUTH, SUITE 300
NORCROSS, GA, 30092, USA

if service of process is not waived.

## FACTS

11. Plaintiff is a citizen of the United States and a resident of the state of Georgia.

12. Plaintiff began working for DGS in January of 2017.

13. DGS placed Plaintiff at Delta as an Aircraft Maintenance Technician ("AMT") at Hartsfield Jackson International Airport.

14. Plaintiff's job was repairing and maintaining Delta aircraft.

15. Throughout Plaintiff's active employment, DGS was a wholly owned subsidiary of Delta.

16. DGS and Delta each employed fifty or more employees for each working day in each of twenty or more calendar weeks throughout 2017-2021.

17. Defendant Co-Employers are subject to the anti-discrimination provisions of the American's with Disability Act ("ADA"), and 42 USC section 1981's ("1981") prohibition against race discrimination and/or retaliation.

18. At all times material to this Complaint, Defendant Co-Employers had joint control over Mr. Cline's employment and the terms and conditions thereof.

19. Defendant Co-Employers are legally joint employers.

20. Upon information and belief, each Defendant had authority to exercise control over the terms and conditions of Plaintiff's employment, specifically but not limited to his job assignments, his hours, his pay, his benefits, his promotional opportunities, and each had the ability to hire and fire him.

21. Initially, Plaintiff worked nights and he was paid $28.00.

22. Plaintiff was told by Defendant Co-Employers that if he switched to the day shift he would make less money ($25/hr), but that he would be less likely to be laid off.

23. On or around September 2017 Plaintiff switched to day shift for Defendant Co-Employers.

24. Throughout Plaintiff's employment he was told by Co-Employers that he did good work and was a valued employee.

25. Throughout Plaintiff's employment he was told by Co-Employers that if he kept on preforming as he had he would have his job indefinitely.

### VIOLATION OF 1981

26. On or around February 21, 2018 a white Delta co-worker John Bushmire (sp?) hung a noose at Plaintiff's workplace.

27. Plaintiff told Mr. Bushmire that the hangman's noose was racially offensive and that he should take it down.

28. Mr. Bushmire said that the noose was used by cowboys and was not intended to be offensive.

29. Mr. Bushmire got upset with Plaintiff and didn't want to take the noose down.

30. Plaintiff and another African American co-worker complained about the noose.

31. Co-Employers conducted an investigation and Mr. Bushmire was terminated.

32. However, despite terminating Mr. Bushmire, Plaintiff began to feel ostracized at work.

33. For example, his co-workers would not speak to him, and they gave him dirty looks etc.

34. Plaintiff complained about retaliation, but no action was taken.

## WILLFUL VIOLATION OF THE FMLA

35. The retaliation Plaintiff suffered from his complaint of race discrimination was very stressful.

36. This stress contributed to Plaintiff having a heart attack on or around June 26, 2018.

37. Plaintiff was admitted to the hospital and he had quadruple bypass surgery.

38. At the time of Plaintiff's admission to the hospital he had been employed with co-Employers for over 12 months.

39. At the time of Plaintiff's admission to the hospital he had worked more than 1250 hours in the past 12 months.

40. At the time of Plaintiff's admission to the hospital both employers were covered by the FMLA

41. At the time of Plaintiff's admission to the hospital both employers had 50 of more employees within 75 miles of Plaintiff's work location.

42. Plaintiff's surgery and heart attack constitutes a serious health condition as defined by the FMLA.

43. On or around June 26, 2018, Plaintiff contacted his Co-Employers and notified them of his medical condition.

44. Plaintiff timely notified his employers of his serious health condition.

45. Subsequently, Plaintiff was granted FMLA leave.

46. In or around August 2018, Plaintiff became healthy enough to return to work.

47. Plaintiff notified Co-Employers that he was ready to come back to work.

48. Despite, Plaintiff's notice he was not allowed to return to his position.

49. Plaintiff was not allowed to return despite the fact that Delta had a need for AMT's such as himself.

50. In fact, Co-Employers advertised for AMT positions after Plaintiff was ready to return despite Plaintiff's availability.

51. Instead, Plaintiff was replaced.

52. Defendant Co-Employers decision to violate the FMLA was intentional.

53. Plaintiff was replaced and not allowed to return to his position to interfere and/or retaliate against him for his use of FMLA leave, to punish him because of his race and to retaliate against him for his support of a complaint of race discrimination, and lastly because of his need for a disability accommodation. Plaintiff to this day is listed as an employee with Co-Employers, but he has never been placed back on the schedule despite his repeated request to be reinstated.

## WILLFUL VIOLAITON OF THE ADA

54. Plaintiff incorporates by reference each and every preceding paragraph of this Complaint.

55. Plaintiff has a disability as defined by the ADA.

56. As detailed above, Plaintiff notified Defendant Co-Employers of his disability and his need for an accommodation. Specifically, Plaintiff needed time

off to recover from his surgery and light duty for a short period of time upon his return.

57. Defendant refused Plaintiff's accommodation suggestion and refused to engage in the deliberative process to come up with a reasonable accommodation.

58. Defendant's actions violated the ADA.

59. As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered damages, including but not limited to loss pay, job benefits, emotional distress, and all other damages allowed by law.

## **RETALIATION**

60. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

61. Plaintiff engaged in protected activity under the ADA, 1981, and the FMLA by requesting leave to recover from surgery, light duty, and by making and supporting a claim of race discrimination.

62. Plaintiff was terminated in retaliation for engaging in these protected activities.

63. Defendant's actions constitute unlawful retaliation in violation of the aforementioned statues.

64. Defendant willfully and wantonly disregarded Plaintiff's rights and Defendant's retaliation against Plaintiff was undertaken intentionally and in bad faith.

65. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

WHEREFORE, Plaintiff demands a trial by jury and for the following relief:

(a) a declaratory judgment that Defendants have engaged in unlawful employment practices in violation of the ADA, the FMLA, and 1981, as amended;

(b) an injunction prohibiting Defendants from engaging in unlawful employment practices in violation of the ADA, the FMLA and 1981;

(c) full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e) compensatory damages in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, special damages, and liquidated damages for Defendants' violation of the FMLA;

(f) punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendants for its conduct toward Plaintiff and deter it from similar conduct in the future;

(g) reasonable attorney's fees and costs; and

(h) other and further relief as the Court deems just and proper.

Respectfully submitted this 24th day of January 2021.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com
Attorneys for Plaintiff

THE MIXON LAW FIRM
1691 Phoenix Boulevard
Suite 150
Atlanta, Georgia 30349
Telephone: (770) 955-0100
Facsimile: (678) 999-5039